# Underwood's Appeal. Freeman's Estate.

Testator devised and bequeathed to his wife, *inter alia*, two houses and ninety shares of bank stock, "for and during the term of her natural life," and directed "that the residue of his estate should descend and be divided in the same manner and proportions as is directed by the laws of Pennsylvania in cases of intestacy, saving however my wife's interest therein." *Held*, that the widow took only a life interest in the bank stock, and at her death it would go to the heirs of testator. *Held, further*, that a remainder in the stock which arose only at the widow's death, when she personally ceased to be able to take at all, was not a residue of property in which her interest as a living widow was intended to be saved; and that which the testator did save over and above and after satisfying the devise and bequests to her and his debts, was that interest which she as a living widow could take in other property.

October 10th 1877. Before AGNEW, C. J., SHARSWOOD, MERCUR, GORDON, PAXSON, WOODWARD and STERRETT, JJ.

Appeal from the Orphans' Court of *Allegheny county* : Of October and November Term 1877, No. 273.

This appeal was from the decree of the court making distribution of the proceeds of certain bank stock in the hands of the executors of John Freeman, deceased.

John Freeman died in 1846, leaving a will, which contained the following provisions :—

"I do hereby give, devise and bequeath to my beloved wife, Ann,

all those two several brick dwelling-houses and lots on Federal street, in the city of Allegheny, adjoining each other, and in one of which I now reside, together with ninety shares of the capital stock of the Exchange Bank of Pittsburgh, belonging to me, to have and to hold and enjoy the rents, issues and profits of the said houses and stock for and during the term of her natural life.  And I do moreover give and bequeath to her my said wife, the sum of two thousand dollars in cash, to be paid to her by my executors as soon as convenient after my decease ; and also, all my household and kitchen furniture, of every description whatsoever—the said money and furniture to be enjoyed and disposed of by her as her own absolutely.

" And in regard to the residue of my estate, real and personal, which may remain after satisfying the above devises and bequests, I do hereby order and direct that after the payment of my just debts and funeral expenses thereout, the same shall descend and be divided in the same manner and proportions as is directed by the laws of Pennsylvania in cases of intestacy, saving, however, my wife's interest therein ; it being my express intention that the foregoing devises and bequests shall not be in lieu of her said interest, but in addition to, and independent thereof."

The deceased left a large real and personal estate, in addition to the special provision for his wife, which residue was divided among the widow and heirs in accordance with the intestate laws.

Moses Underwood, surviving husband and general legatee of the widow of John Freeman, deceased, claimed one-half the bank stock bequeathed to Ann Freeman, for life.

The court, Ewing, J., specially presiding, in dismissing Underwood's exceptions to the account of the executors, said :—

" Reading the whole will of John Freeman in the light of the surrounding circumstances, I am satisfied that the intention of the testator was to limit all interest of his wife in the two houses and the bank stock in question to the duration of her life.   The saving clause in favor of the wife's interest is referable wholly to the large real and personal estate not specified in the will.   The exceptant Moses Underwood is not entitled to any part of the bank stock or its proceeds."

Underwood then took this appeal.

*George Shiras, Jr.*, for appellant.—It is difficult to see what form of language could have been used by the testator more explicitly declaring that she should be entitled to whatever the intestate law would give her in his entire estate, in addition to the special bequests. The construction put upon the will by the court below wholly ignores the language thereof referring to the intestate law, and makes it the ordinary case of an election by a widow between the provisions of the law and the will.

[Underwood's Appeal.]

*Bayne & Magee*, for appellees.—It is evident that the testator intended to provide adequately for his wife, and that accomplished, he desired to transmit his estate to his brothers and sisters, of whom there were six. He had no children, and it is clear that the objects of his bounty were his wife and his brothers and sisters. What interest is saved to her? Obviously, her share in the residue of his estate; and for the purpose of making his intention incapable of being misunderstood, he declares that her life-estate in the houses and bank stock, and her absolute property in the money and household furniture, shall not be in lieu of her share of the residue of his estate, but in addition to and exclusive of such interest in the residue. She acted on this interpretation of the will. She took her share of the residue of his estate in 1855, amounting to over $18,000, and at a second distribution, in 1870, she got over $30,000. She never claimed the absolute right of property in one-half the bank stock; she never reduced it to possession. Why did she not assert her right at the first or second distribution, if the contention of the appellant be correct? She accepted the terms of the will, and recognised her title to the bank stock as a life-estate in the ninety shares, and not as an absolute right of property in one-half, and a life-estate in the other half.

The judgment of the Supreme Court was entered October 29th 1877,

Per Curiam.—When John Freeman came to make his will he declared his desire to dispose of *all* the property which it had pleased God to bless him with. He did not intend to die intestate. He first of all gave his wife a life-estate in certain real estate, and in the stock in question, and two thousand dollars in cash and all his household and kitchen furniture. What did he do with the remainder of his property? He says: "In regard to the residue of my estate, real and personal, which may remain after satisfying the above devises and bequests," and after payment of debts, "the same shall descend and be divided in the same manner and proportions, as is directed by the laws of Pennsylvania in cases of intestacy, saving, however, my wife's interest therein." The first thought which strikes the mind is, what did John Freeman understand himself as the residue of his estate, real and personal, remaining after *satisfying* the devises and bequests to his wife and payment of his debts? The next thought is, what interest of his wife therein did he intend to save? He had other estate, real and personal, which must be disposed of immediately after his death, and while his wife was yet living, and this he intended and said should go in the channel of the law. He clearly intended to save his wife's interest in this property, and hence, he said, "it being my express intention that the foregoing devises and bequests shall not be in lieu of her interest, but in addition to and independ-

ent thereof." This interest—*that* which he intended should be saved to her, was clearly the interest of a *living* wife, not one who is *dead.* The devises and bequests to her were expressly, for *life,* and for the *whole* property thus willed to her, and, being for life, there was nothing remaining thereof to be saved to her as a living wife; nor was there a necessity for saving it, because she had the whole of it to be enjoyed so long as enjoyment was capable, whereas her widow's interest would have been one-*half* only.

In the mind of the testator it is evident that a *post mortem* enjoyment of a part of that of which he had given her the whole for life, was not likely to be present. When she died to whom would he suppose it would go? Not to herself, for the period of her enjoyment having ceased by the express terms of his will he would naturally believe the remainder would then go to the only persons in being to take it, viz.: to his own heirs or successors. The real and personal estate he gave to her were given in the same breath, for the same term, and manifestly were intended to go together to her, so long as she could enjoy them herself, while his main thought was that the intestate clause would carry all estate not given to her to his own heirs and not into a strange line of distribution. When she died the realty manifestly would go to his own heirs, not to hers, and the same intent which directed the whole of the stock to her *life-long* enjoyment, manifestly intended it to go when she would no longer enjoy it, to those of his own blood. At her death she was no longer wife or widow, and she had neither wife nor widow's interest to be saved in these devises and bequests to her. They had served the *express* purpose of the will, and his intent to carry all he had not given to her to his own blood, must prevail, instead of finding an intestacy of one-half of the stock to carry it into a new line. It seems to be clear, therefore, that a remainder in the stock which arose only at her death, when she personally ceased to be able to take at all, was not a residue of property in which her interest as a living widow was intended to be saved; and that which the testator did save, over and above and after satisfying the devises and bequests to her and his debts, was that interest which she, as a *living* widow, could take in other property.

> Decree affirmed, with costs to be paid by the appellant, and the appeal dismissed.